Marie **AURORA**, SS # 070–30–3195, etc., et al., Plaintiffs,

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. CV 87–3740.

United States District Court, E.D. New York.

July 11, 1989.

---

Charles Robert, Robert Huber Lerner & Bigler, Rockville Centre, N.Y., for plaintiffs.

Andrew J. Maloney, U.S. Atty. by Bruce H. Nims, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Marie Aurora ("Aurora") brings this action to review a final determination of the Secretary of Health and Human Services (the "Secretary") denying medical benefits on the ground that Aurora received only custodial care during a stay at the St. James Nursing Home. Also named as a plaintiff is the Senior Citizens' Coordinating Council of Long Island (the "SCCC"). The SCCC is alleged to be an "umbrella organization" consisting of over twenty-five member organizations with over 15,000 senior citizen members. Although plaintiffs have not interposed a class certification motion, this action has been styled as a class action.

In response to this Court's order that the parties move, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings, the Government has submitted a brief in support of such a motion. Plaintiffs, on the other hand, have submitted a brief discussing several of the Secretary's allegedly illegal practices. Specifically, plaintiffs complain of the Secretary's alleged policy of "non-acquiescence" to the principle of stare decisis, the non-acquiescence to decisions of this Court and the illegal adoption of a level of care standard. After addressing the merits of Aurora's appeal the Court will discuss the status of plaintiffs' purported class action.

### I. *Aurora's Claim*

After a brief stay at Brookhaven Memorial Hospital Aurora was admitted to the St. James Nursing Home (the "Nursing Home"). Upon that transfer plaintiff was notified that Medicare would not cover expenses incurred at the Nursing Home. The decision not to cover these expenses became the subject of an administrative review process that included a hearing before an Administrative Law Judge ("ALJ"). The ultimate administrative ruling upheld the denial of coverage and this appeal followed.

Basically, the resolution of this dispute turns on whether the care received by Aurora during the time period at issue is properly characterized as skilled nursing care or merely as custodial care. If this Court holds that the finding that Aurora received only custodial care is supported by substantial evidence, then this Court must affirm the decision of the Secretary. If, on the other hand, this Court holds that substantial evidence does not support the finding urged by the Secretary but instead, shows that Aurora received skilled nursing and rehabilitative services during her stay at the Nursing Home, the Court must re-

verse the decision of the Secretary. After a brief discussion of the relevant statutes and regulations, the Court will consider the merits of the parties' claims.

## II. *Statutory and Regulatory Framework*

Part A of Medicare provides basic insurance against the cost of, among other things, post-hospitalization extended care. 42 U.S.C. § 1395d(a)(2)(A). 42 U.S.C. § 1395f provides for the payment, by Medicare, of post-hospitalization expenses if certain conditions are met. Specifically, the services at issue must consist of skilled nursing or rehabilitative care which "as a practical matter can only be provided in a skilled nursing facility on an inpatient basis, for any of the conditions with respect to which the patient was receiving inpatient hospital services." 42 U.S.C. § 1395f(a)(2)(C). The regulations promulgated pursuant to this statute describe, in greater detail, the type of care that is covered by Medicare. Specifically, the regulations define "skilled nursing and skilled rehabilitation services" as services that:

(1) are ordered by a physician;

(2) require the skills of technical or professional personnel such as registered nurses, licensed practical (vocational) nurses, physical therapists, occupational therapists, and speech pathologists or audiologists, and

(3) are furnished directly by or under the supervision of, such personnel.

42 C.F.R. § 409.31(a). *See Hurley v. Bowen,* 857 F.2d 907, 911 (2d Cir.1988). In addition to setting forth a list of services that qualify as "skilled nursing services," such as the insertion and sterile irrigation and replacement of catheters, *see* 42 C.F.R. § 409.33(b), and those that do not qualify as "skilled nursing services," such as the administration of routine oral medications, eye drops, and ointments, *see* 42 C.F.R. § 409.33(d), the regulations recognize that a patient's total health care picture must be considered when determining whether the care at issue qualifies for Medicare coverage. Thus, the regulations note that under certain circumstances the "overall management and evaluation" of a plan of care may constitute skilled nursing services covered by Medicare. 42 C.F.R. § 409.33(a)(1). *See Hurley,* 857 F.2d at 911.

As an example of a situation where a patient's overall plan of care constitutes skilled nursing care the regulations refer to a patient recovering from a fracture. Because that patient is an older individual with a history of diabetes and heart trouble, his recovery requires, among other things, careful skin care, the administration of appropriate medication, a diabetic diet and observation to detect signs of deterioration in condition resulting from restricted mobility. The regulations note that under these circumstances the management of the plan of care requires the services of a skilled professional. Thus, it is concluded that even if isolated parts of the patient's treatment can be performed by the patient or by a layperson, the overall program of treatment requires the skills of a professional. Accordingly, the patient's treatment is covered by Medicare. *Id. See also* 42 C.F.R. § 409.32(b) (special medical complications may result in classification of unskilled services as skilled). In a similar vein, the regulations note that when the skills of a professional are required to observe and assess a patient's changing condition, the patient's care will be covered by Medicare. 42 C.F.R. § 409.33(a)(2).

In sum, the regulations adopt a flexible approach to determining when a patient's care is properly classified as skilled nursing or rehabilitative care. Most important to that determination is the question of whether the care at issue requires the services of a skilled professional to administer or monitor the administration of the care.

When determining whether there is a need for skilled nursing care, courts are guided by two principles. "First, the decision should be based upon a common-sense, non-technical consideration of the patient's condition as a whole. Second, the Social Security Act is to be liberally construed in favor of beneficiaries. A claimant nevertheless has the burden of proving entitlement to Medicare benefits." *Friedman v. Secretary of the Department of Health*

*and Human Services,* 819 F.2d 42, 45 (2d Cir.1987) (citations omitted).

Before turning to the facts at issue, the Court notes that the Secretary's decision as to Medicare coverage is conclusive if supported by substantial evidence. *Hurley,* 857 F.2d at 912; *Friedman,* 819 F.2d at 44. Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Absent any legal error, the Secretary's decision must be upheld if supported by substantial evidence. *Dumas v. Schweiker,* 712 F.2d 1545 (2d Cir.1983).

### III. *The Care Provided to Aurora*

As noted above, Aurora was transferred to the Nursing Home after a short stay at Brookhaven Memorial Hospital. Aurora was initially admitted to the hospital due to pain and swelling of her left knee. The hospital records indicate that there were contusions on plaintiff's left knee and that plaintiff suffered from hemarthrosis (blood in the joint) as well as arthritis of her left knee. Those records also indicate that Aurora had cardiomegaly (an enlarged heart) and suffered from arteriosclerotic heart disease (hardening of the arteries). While at the hospital the fluid was removed frm Aurora's knee and she was placed on anti-inflammatory medication. Plaintiff responded well to this treatment and, upon discharge, was able to walk with assistance and a walker.

Notes generated during Aurora's stay at the Nursing Home reveal that she received physical therapy twice each week. Aurora's attitude was subject to fluctuation. While she is described as appearing confused and anxious at times, other descriptions discuss an improved attitude. On those occasions when plaintiff was confused and/or agitated, the record reveals that verbal reassurement by staff members often worked to improve Aurora's state of mind. Plaintiff required assistance in activities of daily living such as bathing and ambulation and was incontinent. On occasion, Aurora required coaxing before she would properly eat. Doctors' orders generated during Aurora's stay at the Nursing Home reveal that plaintiff was placed on medication for her anxiety and pain. All drugs were administered orally and there is no record evidence of a constant monitoring of medication.

█ When the treatment received by Aurora in the Nursing Home is evaluated in light of the standards referred to above, the Court has little difficulty concluding that the ALJ's characterization of the treatment as custodial in nature is supported by the requisite substantial evidence. Most of the services provided Aurora, such as assistance with eating and the administration of oral medication on a routine basis, do not fall within the category of services described as skilled nursing care. The consideration of plaintiff's overall plan of care does nothing to change this conclusion. Since the Court finds substantial evidence to support the Secretary's determination the Court affirms the decision denying Medicare coverage.

### IV. *Status of the Class Action*

█ As noted above, plaintiffs have styled this action as a class action. An action may not be treated as a class action, however, absent a court order certifying the class. *Baxter v. Palmigiano,* 425 U.S. 308, 310–12, 96 S.Ct. 1551, 1554–55, 47 L.Ed.2d 810 (1976). Civil Rule 4(c) of this Court requires a party initiating a class action to move for class certification status, pursuant to Rule 23 of the Federal Rules of Civil Procedure, within sixty days of the filing of the complaint. Although this case was filed more than one year ago, plaintiffs have never taken the appropriate steps to move for class certification. In light of plaintiffs' failure to comply with appropriate procedures the Court declines to allow this case to proceed as a class action.

### CONCLUSION

The decision denying plaintiff Aurora's Medicare claim is affirmed. Since the

Court declines to allow this case to proceed as a class action, the case is, in all respects, dismissed.

SO ORDERED.